E-FILED; Dorchester Circuit Court
Docket: 12/10/2025 3:34 PM; Submission: 12/10/2025 3:34 PM
Envelope: 24191253

# CIRCUIT COURT OF MARYLAND
# FOR DORCHESTER COUNTY

| | |
|---|---|
| REBECCA J. CLARK<br>6912 Hubbard Road<br>Hurlock, MD 21643, | \*<br>\* |
| *Plaintiff,* | \* |
| | \* |
| v. | |
| | \* |
| CITY OF CAMBRIDGE<br>410 Academy Street<br>Cambridge, MD 21613, | \*   Case No.: C-09-CV-25-000347 |
| | \* |
| *Defendant.* | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Rebecca J. Clark ("Plaintiff"), by and through her undersigned counsel, John B. Stolarz, hereby files this Complaint against Defendant, the City of Cambridge ("Defendant"), and states as follows:

### I. PARTIES.

1. Plaintiff Rebecca J. Clark is a White female who began her employment with the Cambridge Police Department in 2020.

2. Defendant City of Cambridge is a municipal corporation responsible for the administration and management of the Cambridge Police Department ("CPD").

### II. FACTUAL ALLEGATIONS.

3. In July 2025, Plaintiff was appointed Officer in Charge of the Criminal Investigation Division ("CID"), and on September 29, 2025, she was promoted to the rank of Detective Sergeant.

1

4. Plaintiff's duties included managing the daily operations of CID, case management, assigning officers to investigative calls, and overseeing the Evidence Room.

5. At all relevant times, Deanna Sutton, who is Black, served as the Evidence Technician responsible for the Evidence Room. Her duties included logging and maintaining property and evidence, preserving chain of custody, maintaining documentation, releasing property for court purposes, inventorying and organizing the evidence vault, maintaining supplies, coordinating with allied agencies, and testifying in court proceedings as required.

6. On August 12, 2025, Plaintiff emailed Captain Shane Hinson, her supervisor, advising him of the disorganized condition of the Evidence Room and of Ms. Sutton's refusal to carry a department radio—an essential requirement for responding to crime-scene evidence collection requests. The radio was essential in order for dispatch office to have direct contact regarding to related frequent evidence inquiries.

7. Following this report, Plaintiff regularly observed Ms. Sutton disregarding established protocols and procedures. Plaintiff further observed Ms. Sutton frequently absent from her assigned workspace, engaging in personal conversations, walking around the station, and using her cellular phone during work hours. Ms. Sutton also repeatedly failed to comply with Plaintiff's directives to complete assigned tasks and failed to follow directives regarding reorganization of the evidence room.

8. The following are examples of significant performance issues witnessed and reported by Plaintiff:

    A. Upon initial inspection of the evidence room, the room was found to be grossly mismanaged as evidence was observed in trash cans with plastic bins containing evidence stacked on top of each other. Several items were observed unsealed and open without chain of custody attached and biohazard (bloody) clothing was found unpackaged lying out on a counter where individuals inside the room could have contact with it.

    B. On or about August 28, 2025, Plaintiff discovered multiple cases requiring laboratory analysis—some pending for months—had not been processed. Certain evidence items from incidents occurring as early as early 2025 had not been documented, secured, or submitted to the appropriate crime laboratory. These lapses involved drug offenses, a domestic assault, a shooting, and malicious destruction of property. One such matter involved a March 28, 2025 drug arrest, where evidence purportedly submitted to the

2

Maryland State Police Crime Laboratory had, in fact, been left on a shelf bearing a handwritten note stating "needs correction," indicating no processing had occurred. Plaintiff reported these deficiencies to Captain Hinson.

C. In a case scheduled for trial, Ms. Sutton had packaged drug evidence obtained from a residence. On September 25, 2025, Plaintiff contacted Ms. Sutton to remind her of her required testimony in a significant drug possession and distribution case, for which Ms. Sutton had been served notice on August 20, 2025. Ms. Sutton did not respond to Plaintiff's calls. Plaintiff then texted Ms. Sutton instructing her to contact the State's Attorney's Office, as she had refused to return their calls. As a result, the State's Attorney's Office negotiated a plea agreement less favorable than anticipated. Plaintiff reported this matter to Captain Hinson.

D. On or about July 24, 2025, Plaintiff directed Ms. Sutton to contact five officers whose evidence documentation required corrections before submission for analysis. Plaintiff later learned that Ms. Sutton began leave on August 26, 2025, without completing this directive, requiring Plaintiff to personally contact the officers to secure the necessary corrections.

9. Throughout this period, Plaintiff held weekly meetings with Captain Hinson during which she consistently reported concerns regarding Ms. Sutton's work performance.

10. Despite repeated documented deficiencies, Captain Hinson took no disciplinary action against Ms. Sutton.

11. On October 28, 2025, Chief Justin Todd removed Plaintiff's responsibility over the Evidence Room and her supervisory authority over Ms. Sutton following Ms. Sutton's verbal complaint to Human Resources. Plaintiff was transferred from CID to the Road Patrol Division, where she was assigned rotating day and night shifts.

12. Plaintiff was informally told she was being characterized as "mean" and as "nitpicking" Ms. Sutton. Plaintiff was never given an opportunity to respond to or contest these allegations.

13. Plaintiff was further informed that no internal investigation would be conducted regarding Ms. Sutton's accusations.

14. Upon information and belief, instead of being disciplined, Ms. Sutton was rewarded with a position in the Records Department.

15. Defendant has a pattern and practice of disciplining White employees of the CPD

more severely than Black employees.

16. In October 2022, Chief Justin Todd was informed that then-Sergeant Antione Patton, who is Black, allegedly used his position to influence, fraternize with, and engage in relationships with several female recruits in violation of department policy. Rather than impose discipline, Chief Todd promoted him to the rank of Captain.

17. In April 2024, then–Cpl. Jones, who is Black, improperly investigated a kidnapping/abduction case involving a ten-year-old girl taken by a mentally ill, non-custodial family member. Although concerned relatives notified him on April 11, 2024, he did not file a missing-person report until April 22, 2024, and only after persistent pressure from the family. The child was ultimately found on April 23, 2024, in a vehicle with the non-custodial family member by the New York Police Department, starved and emotionally traumatized. Plaintiff submitted a detailed complaint against Cpl. Jones for dereliction of duty, citing multiple policy violations and his history of similar misconduct. No disciplinary action was taken. Instead, the Cambridge Police Department selected him as its 2024 Officer of the Year and awarded him several prestigious honors

18. In contrast, Pfc. Nicholas Gonzalez, who is White, faced severe disciplinary consequences after being accused of asking for a hug from a woman during a December 2018 traffic stop.

### III. CAUSE OF ACTION.
### Violation of 42 U.S.C. § 1981 (Race Discrimination)

19. Section 1981 of the Civil Rights Act of 1866 prohibits discrimination in employment on the basis of race.

20. The Defendant disciplined the White Plaintiff by removing her from a prestigious supervisory assignment over a trivial and pretextual issue, while failing to discipline Ms. Sutton, a Black employee, as well as other Black employees, whose work performance was substantially below departmental expectations.

21. Defendant disciplined the White Plaintiff by removing her from a prestigious supervisory assignment over a trivial and pretextual matter while failing to discipline

Sergeant Patton for conduct substantially more severe than the false allegations against the Plaintiff.

22. Plaintiff's reassignment from CID to Road Patrol constituted an adverse employment action and resulted in significant emotional distress, humiliation, embarrassment, harm to her career trajectory, and loss of professional standing.

23. Defendant's actions constitute unlawful race-based discrimination in violation of 42 U.S.C. § 1981.

## IV. PRAYER FOR RELIEF.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

A. Judgment against Defendant;

B. Compensatory damages in the amount of $500,000.00;

C. Punitive damages in the amount of $1,000,000.00;

D. Reasonable attorney's fees and litigation expenses; and

E. Such other and further relief as the Court deems just and proper.

/s/ John B. Stolarz
John B. Stolarz
AIS No.: 7911010330
The Stolarz Law Firm
6509 York Road
Baltimore, MD 21212
(410) 532-7200
(410) 372-0529 (fax)
stolarz@verizon.net

Attorney for Plaintiff

## DEMAND FOR A JURY TRIAL

Rebecca J. Clark, Plaintiff, demands a jury trial on all issues.

/s/ John B. Stolarz
John B. Stolarz

Attorney for Plaintiff

W:\5553\Pleadings\Complaint.wpd